## Case No. 5,150.

FULLER et al. v. IVES et al.

[6 McLean, 478.] [1]

Circuit Court, D. Michigan. June Term, 1855.

Howard, Lockwood & Clark, for plaintiffs.
Mr. Walker, for defendants.

OPINION OF THE COURT. This is a creditor's bill, which was filed the 3d of July, 1854, and which represented, that plaintiffs had obtained a judgment against defendants on which execution was issued and returned no property found. That Ives had fraudulently conveyed his property, so as to place it beyond the reach of his creditors. The assignment was made in the following terms—"Whereas, I, Stephen H. Ives, of Detroit, in the state of Michigan, being unable to pay my debts and liabilities, and being desirous of having all my property finally distributed among my creditors—Now, therefore, in consideration of one dollar to me in hand paid by Jno. S. Wright, of said Detroit, I do hereby transfer, assign and set over to said John S. Wright with all my property of every name and nature, real, personal and mixed, including bonds, notes and shares in actions of every kind, excepting only such property assigned as is by law expressly exempt from sale by execution, which property so assigned I shall hereafter more particularly describe in a schedule to be attached hereto, for the following purposes, viz: First, to pay all debts or demands due from me for personal and family expenses; all debts incurred by me since the 20th of February, 1854, including all fees and charges for services, retainers and expenses due or to become due to my counsel, and all expenses connected with my litigation with George W. Markham, and all debts due Cyrus W. Jackson, J. S. and N. H. Wright or either of them. Second, to pay all my other creditors share and share alike. Third, to pay over to me or my assigns any surplus; and the said John S. Wright is fully authorized to turn all of said property, as soon as it can reasonably be done; and is clothed with all necessary powers to effectuate and promptly to

[1] [Reported by Hon. John McLean, Circuit Justice.]

carry this trust into effect, and for this purpose to use my name or otherwise as may be most desirable."

It appears from the statement of Ives under oath, on his examination by the master in chancery, the 30th of August, 1854, that on the 1st July, 1854, he executed an assignment in the evening at Mr. Walker's office, in the presence only of Mr. Walker, his counsel, and he left the assignment with him and has not since seen it. That during the year previous to the assignment up to the 14th of February, 1854, he had been engaged in the banking and broker's business, under the firm of S. H. Ives & Co., and on that day the firm was dissolved. He received from that firm for his good will, five thousand dollars. On the 20th of February he received a sum in a check on the bank for five thousand three hundred and five dollars, and near the same time a check for three hundred dollars. These sums balanced his account with the bank. He received on the 20th February, not included in the above, the sum of four thousand seven hundred dollars. C. &. N. Ives gave defendant a draft or certificate for three thousand five hundred dollars; and a certificate of Indiana bank stock for fifteen hundred dollars. On the 1st of August, 1853, he received for his quarter profit in banking, nineteen hundred and sixty-three dollars—for the ensuing quarter six thousand two hundred and fifty-six dollars, and for the two succeeding quarters ten thousand seven hundred and eighty-seven dollars. And the defendant received from G. W. Markham some twenty-nine or thirty thousand dollars in merchandise. His acceptances for Markham amounted to about forty thousand dollars. These acceptances the defendant alleges were the cause of his failure, and compelled him to assign his property.

From the above exhibit of moneys and property received by the defendant, the necessity for his failure is not perceived. On account of Markham he could not have lost more than fifteen thousand dollars, in converting the merchandise he received from him into money and paying the full amount of his acceptances. This would allow five thousand dollars loss on the merchandise, which was estimated at the wholesale prices. And the moneys he received from other sources very much exceeded the sum of fifteen thousand dollars. But we do not rely on this estimate only, to show the fact and motive of his failure. It does not appear that any part of the acceptances of Markham have been paid. Ives has received about thirty thousand dollars of merchandise and in addition a considerable amount of debts, for his indemnity, but he seems to have made some other appropriation of the means thus received, than the payment of the debts for which he was security. He being a banker in good standing, it is not to be doubted that it was in his power to have paid his acceptances, on a reasonable

indulgence being given. But it does not appear that he proposed any adjustment to his creditors, or asked for any indulgence. But it does appear that he purchased a valuable real estate in Detroit in the name of a near connexion—the deed being made to this person. A valuable block of expensive buildings was constructed, which required a very large expenditure. His father-in-law, who received the deed, was shown to have been in limited circumstances, and wholly unable to buy the ground or build the block of buildings. The evidence is clear to show that the means were furnished by Ives in purchasing the ground and making the improvements.

The facts in the case, without going further into a detail of them, show satisfactorily to the court, that the assignment of Ives was made to hinder and delay his creditors, and we feel bound to declare it to have been fraudulent under the statute. The court will direct a decree to this effect to be entered, and will refer the matter to a master, &c.